UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD HAYES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MAGNACHIP SEMICONDUCTOR CORP., et al., <br><br> Defendants. | Case No.14-cv-01160-JST <br><br> **ORDER GRANTING FINAL APPROVAL** <br><br> Re: ECF Nos. 251, 252 |

Before the Court are Plaintiffs' Motion for Final Approval of Partial Class Action Settlement and Plan of Allocation and Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses. ECF Nos. 251, 252. The Court previously granted a motion for preliminary approval of the settlement, ECF No. 233, and held a fairness hearing on November 21, 2016. The Court grants the motion.

## I. BACKGROUND

### A. The Parties and Claims

Plaintiffs bring this federal securities class action against MagnaChip Semiconductor, Inc. ("MagnaChip"), "several of its current and former senior executive officers and audit committee directors, underwriters, and Avenue Capital [Management II, L.P.], which was MagnaChip's majority and controlling shareholder," for violations of sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 and sections 11, 12(a)(2), and 15 of the Securities Act of 1933. ECF No. 114.

Lead Plaintiff Keith Thomas ("Thomas") brings these claims on behalf of "all persons other than defendants who purchased or otherwise acquired MagnaChip securities between February 1, 2012 and February 12, 2014 (the 'Class Period'), including purchasers of MagnaChip

common stock pursuant to and/or traceable to the Registration Statement and Prospectus issued in connection with MagnaChip's February 6, 2013 follow-on public stock offering . . . ." ECF No. 114 ¶ 1.

Plaintiffs allege that "Defendants violated the federal securities laws by (a) issuing materially false and misleading statements regarding [MagnaChip]'s business, prospects, operations and financial results; (b) failing to disclose the inadequacy of its internal controls and procedures over financial reporting; and (c) engaging in a wide-ranging scheme to materially inflate [MagnaChip]'s reported results." ECF No. 114 ¶ 2.

### B. Procedural Background

Plaintiff Richard Hayes filed the initial complaint in this action. ECF No. 1. The Court later entered an order appointing Keith Thomas as Lead Plaintiff, Pomerantz LLP as Lead Plaintiffs' Counsel, and Glancy Prongay & Murray LLP as Liason Counsel. ECF No. 32.

On June 26, 2015, Plaintiffs filed the operative Third Amended Complaint ("TAC"). ECF No. 114. Five sets of Defendants moved to dismiss Plaintiffs' TAC. ECF Nos. 121, 123, 126, 130, 155. On December 11, 2015, the parties informed the Court that they had reached a settlement with respect to all claims raised against all Defendants except for Avenue Capital,[1] ECF No. 174, and confirmed this in a telephonic case management conference on January 22, 2016, ECF No. 182. The Court issued an order granting in part and denying in part the five Motions to Dismiss on March 7, 2016. ECF No. 196.

On February 5, 2016, Plaintiffs filed a Motion for Preliminary Approval of Partial Class Action Settlement, which involved a proposed settlement between all Plaintiffs and all Defendants except Avenue Capital. ECF No. 185. The Court denied that motion without prejudice in an April 7, 2016 order, identifying four deficiencies in the proposed settlement. ECF No. 212. The parties then filed a second Motion for Preliminary Approval of Partial Class Action Settlement, which identified the changes the parties made to account for these four deficiencies. ECF No. 221. The Court granted preliminary approval on July 18, 2016, finding that the four deficiencies

---

[1] The Court refers to these Defendants as the "Settling Defendants."

had been remedied. ECF No. 233. Plaintiffs have now filed a Motion for Final Approval of Partial Class Action Settlement and Plan of Allocation and a Motion for Attorneys' Fees and Reimbursement of Litigation Expenses. ECF Nos. 251, 252. The Court held a fairness hearing on November 21, 2016.

### C. Terms of the Agreement

Under the settlement agreement, MagnaChip has agreed to pay $23,500,000.00 (the "Settlement Amount") into a Qualified Settlement Fund on the date on which the settlement is finally approved. ECF No. 251 at 12.[2] Assuming the Settling Defendants are 50 percent liable for Plaintiffs' total alleged damages of $330 million dollars, the Settlement Amount represents 15 percent of Plaintiffs' likely recovery at trial if they were to prevail. Id. at 19. The following amounts will be subtracted from the Settlement Amount: (1) the costs of settlement and notice administration; (2) Class Counsel's attorney's fees; (3) attorney's expenses; (4) a payment to Thomas of $1,500.00; (5) other unspecified fees and expenses authorized by the Court; and (6) taxes and tax expenses. ECF No. 185, 184-2.

After subtracting these amounts, any remaining funds (the "Settlement Class Settlement Proceeds") will be distributed to the class, which Thomas defines as follows:

> All Persons who purchased or otherwise acquired MagnaChip Securities between February 1, 2012 and February 12, 2015 (the 'Settlement Class Period'), including purchasers of MagnaChip common stock pursuant and/or traceable to the Registration Statement and Prospectus issued in connection with MagnaChip's February 6, 2013 follow-on public stock offering. Excluded from the Settlement Class are Defendants, MagnaChip's officers and directors during the Settlement Class Period, and all such excluded Persons' immediate families, legal representatives, heirs, parents, wholly-owned subsidiaries, successors, and assigns. Also excluded from the Settlement Class are those Persons who file valid and timely requests for exclusion in accordance with the Court's Order Preliminarily Approving Partial Settlement and Providing for Notice.

ECF No. 251 at 26.

Class members who submit timely claims will receive payments on a pro rata basis based

---

[2] The partial Settlement will also release, without any contribution, all claims against the Underwriter Defendants: Barclays Capital Inc., Deutsche Bank Securities Inc., Citigroup Global Markets Inc., UBS Securities LLC, and Needham & Company LLC. ECF No. 253 at 4.

3

1  on the date(s) class members purchased and sold MagnaChip shares as well as the total number
2  and amount of claims filed. ECF Nos. 253 at 27; 184 at 21-24. To calculate the amount paid to
3  each class member, the Claims Administrator will determine each claim's share of the Settlement
4  Class Settlement Proceeds based upon the claim's recognized loss. Id. Recognized loss will be
5  determined for each MagnaChip share purchased or otherwise acquired during the Settlement
6  Class Period. The calculation of recognized loss will depend upon several factors: (1) when the
7  MagnaChip shares were purchased or otherwise acquired during the Settlement Class Period; (2)
8  the number of shares; (3) whether the shares were sold; and (4) if sold, when they were sold and
9  for what amounts. ECF No. 184-2 at 8. The recognized loss calculation is not an estimate of
10 individual settlement awards, but the basis upon which the Settlement Class Settlement Fund will
11 be proportionately allocated to the claimants. Id. at 9. According to the parties' calculations, the
12 settlement represents an amount of $0.591 per share after deductions of attorneys' fees and other
13 expenses, and $0.81 per share without deductions, calculated based on all 28,918,000 shares
14 outstanding as of the end of the Settlement Class Period. Id. at 3. The actual individual settlement
15 payments will depend on how many claims are filed. Id. No distribution will be made to
16 claimants who would otherwise receive a distribution of less than $10.00. Id. at 15.

17 In addition to the distribution to the class, the Settlement provides the following
18 "additional benefits that will assist the Settlement Class in the ongoing litigation against Avenue
19 Capital": "(i) accelerated production of documents translated from Korean, which otherwise would
20 have cost the Class several million dollars to translate; and (ii) continued availability of Settling
21 Defendants (many of whom are foreign residents) for discovery requests from Plaintiffs as if they
22 remained parties to the Action." ECF No. 251 at 12.

23 As part of the settlement, Thomas has agreed to release all claims,

> including both known claims and Unknown Claims, whether arising under
> federal, state, common or foreign law or regulation, that arise out of or relate in
> any way to the purchase or sale of MagnaChip Securities during the Settlement
> Class Period and the acts, facts, statements, or omissions that were or could have
> been alleged or asserted by Plaintiffs or any member of the Settlement Class in
> the Action or in any other action in any court or forum, except that the following
> are expressly excluded from the definition of Released Claims: (i) all claims

4

asserted in the Derivative Actions; (ii) all claims asserted against Avenue Capital in the Action; (iii) all claims brought or that might be brought against MagnaChip or any of the Defendants by the SEC, whether or not they arise out of or relate in any way to the purchase or sale of MagnaChip Securities during the Settlement Class Period; (iv) all claims of any Person who submits a request for exclusion from the Settlement, to the extent that the Court grants any such request; and (v) all claims to enforce any of the terms of this Stipulation.

ECF No. 184 at 11; ECF No, 233 at 6.

For the purposes of the settlement, "Unknown Claims" means:

(i) any claims that the Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, which if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, the decision not to object to the Settlement, provided such claim arises out of or relates to the purchase or sale of MagnaChip Securities; and (ii) any Settling Defendant's Claims that any Settling Defendant does not know or expect to exist in his, her, or its favor, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement. With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that upon the Effective Date, the Settling Parties shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived and by operation of the Order and Final Judgment shall have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United Sates, or principle of common law that is similar, comparable, or equivalent to Cal. Civ. Code § 1542 . . . .

ECF No. 184 at 14-15.

The released claims will be released with respect to "(i) MagnaChip, Park, Hwang, Sakai, Norby, Lee, Tavakoli, Klein, Elkins, non-defendant Brian Mulhern, and the Underwriter Defendants; (ii) each of [their] respective present and former parents, subsidiaries, divisions, departments, and affiliates (and the predecessors, successors, administrators and assigns of each of the foregoing); and (iii) each of the respective stockholders, officers, directors, employees, agents and any of their advisors, counsel, underwriters, representatives of the foregoing in (i) and (ii) in their capacities as such." Id.

## II. FINAL APPROVAL OF SETTLEMENT AGREEMENT

In line with its previous order granting preliminary approval, the Court now concludes that the proposed partial settlement is fair, adequate, and reasonable.

5

**A.     Legal Standard**

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. In order to assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).[3]

Settlements that occur before formal class certification also require a higher standard of fairness. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

**B.     Analysis**

**1.     Adequacy of Notice**

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court has previously approved the parties' proposed notice procedures for both classes. ECF No. 233 at 13. In the motion for final approval, Thomas states that the parties have carried out this notice plan. ECF No. 253 at 24. Strategic Claim Services ("SCS"), the Claims Administrator, mailed 40,078 Notice Packets to potential Settlement Class Members. ECF No.

---

[3] There is no governmental participant in this case, so the Court need not consider this factor.

255-1 ¶ 4. The Notice informed class members about all key aspects of the Settlement, the date, time, and place of the fairness hearing, and the process for objections. ECF No. 251 at 24. 933 Notice Packets were returned as undeliverable. ECF No. 255-1 ¶ 4. SCS obtained forwarding addresses from the post office for 85 of these class members and mailed each a second Notice Packet. Id. The remaining undeliverable Notice Packets were "skip-traced" to locate updated address and re-mailed where new addresses were found. Id.

In addition, the "Court-approved Summary Notice was published in *Investor's Business Daily* on August 8, 2016 and transmitted over the *Globe Newswire* on August 1, 2016." ECF No. 253 ¶ 76. As required by the Preliminary Approval Order, SCS also maintains and posts information regarding the Settlement on a dedicated website established for the Action, www.strategicclaims.net/MagnaChip, to provide Settlement Class Members with information concerning the Settlement, as well as downloadable copies of the Notice Packet and the Stipulation." Id. ¶ 77.

The deadline for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, or the Fees and Expenses Motion, or to request exclusion from the Settlement Class, was October 31, 2016. ECF No. 255-1 ¶ 5-6. In their Reply Brief, Class Counsel state that they have received no objections to the Settlement, and no requests for exclusion. Id.

In light of these actions, and the Court's prior order granting preliminary approval, the Court finds the parties have sufficiently provided notice to the settlement class members. See Lundell v. Dell, Inc., Case No. 05–3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice sent via email and first class mail constituted the "best practicable notice" and satisfied due process requirements).

### 2.     Fairness, Adequacy, and Reasonableness

#### a.     Strength of Plaintiffs' Case and Risk of Continuing Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." Chun–Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

It is true that Plaintiffs have already survived Defendants' motions to dismiss. ECF No. 194. But Plaintiffs could not have been confident of that favorable result at the time they agreed to settle. Moreover, Plaintiffs may not ultimately have been able to adduce sufficient facts to demonstrate the scienter or causation elements of their securities fraud claim. See, e.g., In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (recognizing that "the issues of scienter and causation are complex and difficult to establish at trial"). Proving loss causation, in particular, would have required "expensive, complex, and risky expert testimony." ECF No. 251 at 17.

The "potential inability of Settling Defendants to pay a substantial judgment" also contributed to the risk faced by Plaintiffs in further litigating their case. Magnachip's financial position has deteriorated substantially since the filing of Plaintiffs' complaint. ECF No. 253 ¶ 70. The Company's stock price had fallen by almost two-thirds, and the Company reported its ninth consecutive operating loss. Id. Had Plaintiffs continued to litigate, "the proceeds available for a settlement would have continued to be expended on defense-related costs." ECF No. 251 at 19. The decision to settle was therefore a pragmatic choice given that Plaintiffs "faced a real risk that any victory at trial would be mostly, if not wholly, symbolic due to the Company's financial condition and future prospects." ECF No. 253 ¶ 71.

Accordingly, despite the fact that Plaintiffs' defeated Defendants' motions to dismiss, the Court concludes that this factor weighs in favor of approving the Settlement.

### b. Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting Officers for Justice v. Civil Service Comm'n of the City and Cnty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial. Id. (citing Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998)).

In this case, the $23.5 million fund is a good result for the class.[4] As Thomas explains, this amount represents 14 percent of Plaintiffs' maximum estimate damages, assuming the Settling Defendants are 50 percent liable, and Avenue Capital is 50 percent liable. ECF No. 253 ¶ 114. If Plaintiffs recovered nothing from Avenue Capital, the Settlement Fund would represent 7 percent of the maximum estimated damages. Id. This is a robust figure in light of the fact that "the median settlement in 2015 for securities class actions where the estimated damages were between $250-$499 million was 1.1%." ECF No. 251 at 20 (citing Cornerstone Research, Securities Class Action Settlements, 2015 Review and Analysis (2016)). The Settlement Amount must also be considered against the backdrop of Magnachip's worsening financial situation. Id. Under these circumstances, and given that the settlement also secures for Plaintiffs various additional benefits in their ongoing litigation against Avenue Capital, this factor weighs in favor of approval.

### c. Extent of Discovery

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).

Here, "Plaintiffs' Counsel had the benefit of (a) an extensive investigation; (b) hearing Settling Defendants [sic] arguments on its motion to dismiss; (c) consultation with a damages expert; and (d) adversarial mediation briefing, discussions at the mediation, and the mediator's evaluation of the merits." ECF No. 251 at 21. These actions put Plaintiffs' Counsel in a strong position to evaluate their case and conclude that settlement was the best way forward. See In re Omnivision, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (finding the parties were sufficiently

---

[4] Because this settlement was reached prior to certification of the class, the Court must also examine the settlement for evidence of collusion with a higher level of scrutiny. In re Bluetooth, 654 F.3d at 946. In conducting such an examination, courts must be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." Id. Signs of collusion include, but are not limited to: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendants rather than to be added to the settlement fund. Id. at 947. In the present case, there is no evidence of collusion. Rather, the settlement was the product of a vigorously negotiated mediation supervised by a former judge in this district.

informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation). This factor therefore weighs in favor of approval.

### d. Counsel's Experience

Plaintiffs' Counsel have recommended approval of the settlement. ECF No. 251 at 21. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted). Counsel for both sides have substantial securities litigation experience. Id. at 22. In addition, the Settlement was reached only after two days of in-person mediation, guided by former U.S. District Court Judge Layn Phillips. The Court concludes this factor weighs in favor of approval.[5]

### e. Reaction of the Class

Finally, class members' positive reaction to a settlement weighs in favor of settlement approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted).

The deadline for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, or the Fees and Expenses Motion, or to request exclusion from the Settlement Class, was October 31, 2016. Id. In their Reply Brief, Plaintiff's Counsel states that they have received no objections to the Settlement, and no requests for exclusion. ECF No. 255-1 ¶ 5-6.

Accordingly, the Court concludes this factor weighs in favor of a settlement. See e.g., McKee Foods Corp., 716 F. Supp. 2d at 852 (finding that 4.86% opt-out rate strongly supported approval); Churchill Village LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (holding that approval of a settlement that received 45 objections (.05%) and 500 opt-outs (.56%) out of 90,000 class members was proper).

Balancing these factors, the Court finds the settlement fair and reasonable.

---

[5] The Court considers this factor but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." Principles of the Law of Aggregate Litigation § 3.05 comment a (2010).

10

## III. FINAL APPROVAL OF THE PLAN OF ALLOCATION

### A. Legal Standard

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." In re Oracle Sec. Litig., No. C–90–0931–VRW, 1994 WL 502054, at *1–2 (N.D. Cal. June 16, 1994) (citing Class Pls. v. City of Seattle, 955 F.2d 1268, 1284–85 (9th Cir. 1992)).

### B. Analysis

Under the Allocation Plan described in the Notice, "[e]ach similarly situated authorized claimant will receive a *pro rata* share of the Net Settlement Fund." ECF No. 253 ¶ 83. "In developing the Plan, Lead Plaintiff's expert calculated the estimated amount of artificial inflation in the per share closing prices of MagnaChip common stock that was allegedly proximately caused by Defendants' alleged false and misleading statements and omissions, using the well-accepted 'event study' methodology." Id. ¶ 83. "Lead Plaintiff's expert created artificial inflation tables that are included in the Plan of Allocation," and which will "be used to calculate Recognized Loss Amounts for purchases of MagnaChip Securities during the Settlement Class Period by Authorized Claimants." Id. The Court concludes that this Plan, which does not discriminate between Class Members, is fair and reasonable.

## IV. ATTORNEYS' FEES

### A. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. Id. at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award

attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id. "Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. (citing Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)). However, the benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." Six (6) Mexican Workers, 904 F.2d at 1311. "[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." In re Bluetooth, 654 F.3d at 942.

**B.     Analysis**

Plaintiffs' Counsel moves the Court for $5,875,000 in attorneys' fees, representing 25% of the overall $23.5 million settlement fund. ECF No. 252 at 11. Plaintiffs' Counsel argues that an award of 25% of the overall settlement fund is reasonable because Plaintiffs' Counsel achieved an excellent recovery and exhibited a high level of skill, efficiency, and professionalism. ECF No. 252 at 15, 18. Plaintiffs' Counsel also outline the potential risks associated with collecting a judgment from the Settling Defendants had the case gone to trial, and emphasize that the contingent nature of their representation weighs in favor of finding an award of 25% reasonable. Id. at 17–19.

After careful review of Plaintiffs' Counsel's declarations and filings, the Court concludes that awarding $5,875,000 in attorneys' fees to Plaintiffs' Counsel is reasonable. First, the 25% award requested by Plaintiffs' Counsel is equal to the "benchmark" percentage for a reasonable fee award in the Ninth Circuit. See In re Bluetooth, 654 F.3d at 942. Such a fee award is "presumptively reasonable." Ching v. Siemens Industry, Inc., No. 11-cv-04838-MEJ, 2014 WL 2926210, at *7 (N.D. Cal. June 27, 2014) (citing In re Bluetooth, 654 F.3d at 942). Second, "[n]othing in this case requires departure from the 25 percent standard award." Six (6) Mexican Workers, 904 F.2d at 1311. Indeed, no class member has objected to the proposed settlement or proposed fee award. ECF No. 252 at 12; ECF No. ECF 253-2 ¶ 10; see Ching, 2014 WL

2926210, at *8 (finding that "the lack of objection from the class after notice further demonstrates the reasonableness and fairness of Class Counsels' fee request") (citation omitted).

The Court has also cross-checked this award against the lodestar recovery. Class Counsel calculated the anticipated lodestar as $2,436,643.25, which would result in a multiplier of 2.4. See ECF 252 at 20-21. Class Counsel's lodestar calculation is problematic, however, because it seeks reimbursement for time spent by senior partners to complete tasks that should have been performed by less experienced associates. For example, Pomerantz Partner Marc Gross – whose law firm describes him as having litigated securities cases "for over three decades," and whose billing rate is $1,000 per hour – billed 66.20 hours for "[i]nvestigation and drafting of complaint(s)" and 35.50 hours for "[m]otion to dismiss." ECF No. 256 at 5. Similarly, Pomerantz Partner Michael Wernke billed 188.90 hours for "[m]otion to dismiss" at a rate of $700 per hour. Id. Pomerantz's use of associate time, by contrast, was extremely limited. Id.

Drafting complaints and motions to dismiss requires researching, cite-checking, and other tasks for which partners should not request reimbursement when an associate could have completed the same tasks at a lower rate. Consequently, the Court will apply a blended rate of $600 per hour for every Pomerantz timekeeper who is not a paralegal, resulting in a lodestar total of $1,080,870 for Pomerantz.[6]

Adding the Pomerantz lodestar to that of the remaining firms results in a total lodestar of $2,315,078.75, and a multiplier of 2.54. Therefore, even with the Court's reductions to the lodestar, the multiplier confirms the reasonableness of the award. See Vizvaino v. Microsoft Corp., 290 F.3d 1043 at 1052-54 (conducting a survey of attorneys' fees in "megafund" cases and finding that 83 percent of such cases award a multiplier from 1.0-4.0). Because the Court has verified under both the lodestar method and the percentage-recovery method that the amount of requested fees is reasonable, the Court awards a total of $5,875,000 to Plaintiffs' Counsel.

---

[6] Though not to the same degree, the Rosen Law Firm's time records indicate excessive use of partner time. For example, Partner Laurence Rosen billed a total of 346.1 hours at a rate of $850 per hour for tasks including investigation and drafting of complaints, researching and drafting a motion to dismiss, and document discovery. Because the Rosen Law Firm did make extensive use of its associates who billed at much lower rates, however, the Court does not apply a blended rate to this firm's timekeepers.

13

## V. EXPENSES

### A. Legal Standard

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotations and citation omitted). To support an expense award, Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to access whether the expenses are reasonable. Wren v. RGIS Inventory Specialists, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-cv-05778-JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

### B. Analysis

Plaintiffs are seeking reimbursement of $235,000 in expenses. ECF No. 252 at 22. Plaintiffs' Counsel has provided itemized lists of the costs and expenses separated by category. See ECF Nos. 256-58. Most expenses resulted from mediation, the retention of experts, and travel. ECF No. 256 at 6-12; ECF No. 257 at 7-8. Upon review, the expenses relating to mediation and retention of experts are appropriate, but the travel expenses are not.

For example, Plaintiffs' Counsel requests reimbursement for a roundtrip business-class flight from New York to San Francisco costing $3,606.20. ECF No. 256 at 8. First-class or business-class flights are not a reasonable expense or one that would normally be charged to plaintiff-clients in a consumer class action. See Harris, 24 F.3d at 19. The Court will only reimburse Plaintiffs' Counsel half the cost of any listed business-class flight.[7] Applying this rule, the Court finds that Plaintiffs' Counsel are entitled to a total of $227,529.90 in reimbursable expenses. The difference between what Plaintiffs' Counsel requested in reimbursement for travel expenses and what the Court has ultimately awarded will be added to the common fund for distribution to class members on a pro rata basis.

## VI. SERVICE AWARD

---

[7] Readers of this order should not assume that the Court will reduce future business or first-class flight expense requests by only one-half.

14

### A. Legal Standard

Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publishing Corp., 563 F.3d 948, 958-959 (9th Cir. 2009) (internal citation omitted). Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003) (citation and internal quotations and alterations omitted). Indeed, "courts must be vigilant in scrutinizing all inventive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).

### B. Analysis

Plaintiffs request an incentive award of $1,500 for Lead Plaintiff Thomas. ECF No. 252 at 24. Plaintiffs believe this award is reasonable because Lead Plaintiff reviewed the initial complaint and the amended complaints; reviewed and commented on all significant pleadings and briefs; oversaw the litigation; and communicated with Plaintiffs' Counsel about the action. Id. No one has objected to the proposed incentive award.

To determine the reasonableness of an incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards. Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014). In this Circuit, an award of $5,000 is presumptively reasonable. See Harris v. Vector Marketing Corp., 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.") (citations omitted). Here, the requested incentive award in the aggregate represents .000006% of the settlement fund. In light of Lead Plaintiff's service to the class, the Court finds that a service award of $1,500 is reasonable.

**CONCLUSION**

The Court grants final approval of the proposed settlement and grants Plaintiffs' motion for attorneys' fees and litigation expenses.

IT IS SO ORDERED.

Dated: November 21, 2016

_____
JON S. TIGAR
United States District Judge