UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH THOMAS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MAGNACHIP SEMICONDUCTOR CORP., et al.,<br><br>    Defendants. | Case No. 14-cv-01160-JST<br><br>**ORDER GRANTING MOTION TO SEAL AND DENYING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH AVENUE CAPITAL**<br><br>Re: ECF No. 321, 324 |

Before the Court is Plaintiffs' unopposed motion for preliminary approval of a class action settlement with Avenue Capital. ECF No. 321. In connection with the motion, the parties have also filed a motion to file under seal a confidential supplemental agreement. ECF No. 324. The Court will grant the motion to seal and deny the motion for preliminary approval.

**I.    BACKGROUND**

**A.    The Parties and Claims**

Plaintiffs originally brought this federal securities class action against MagnaChip Semiconductor, Inc. ("MagnaChip"), "several of its current and former senior executive officers and audit committee directors, underwriters, and Avenue Capital [Management II, L.P.] ("Avenue Captial"), which was MagnaChip's majority and controlling shareholder," for violations of sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 and sections 11, 12(a)(2), and 15 of the Securities Act of 1933. ECF No. 114.

Plaintiffs allege that "Defendants violated the federal securities laws by (a) issuing materially false and misleading statements regarding [MagnaChip]'s business, prospects, operations and financial results; (b) failing to disclose the inadequacy of its internal controls and procedures over financial reporting; and (c) engaging in a wide-ranging scheme to materially

inflate [MagnaChip]'s reported results." ECF No. 114 ¶ 2.

**B.  Procedural History**

Plaintiff Richard Hayes filed the initial complaint in this action. ECF No. 1. The Court later entered an order appointing plaintiff Keith Thomas as Lead Plaintiff, Pomerantz LLP as Lead Plaintiff's Counsel, and Glancy Prongay & Murray LLP as Liason Counsel. ECF No. 32.

On June 26, 2015, Plaintiffs filed the operative Third Amended Complaint ("TAC"). ECF No. 114. Five sets of Defendants filed a motion to dismiss Plaintiffs' TAC. ECF Nos. 121, 123, 126, 130, 155.

In February 2016, Plaintiffs settled with all Defendants (referred to in Plaintiffs' current motion, and this order, as the "Individual Defendants") except Avenue Capital (this settlement is referred to herein as the "First Settlement"). The Court granted final approval of the First Settlement on November 21, 2016. ECF No. 270. Under the First Settlement, the Individual Defendants paid $23.5 million dollars into the Settlement Fund, a figure that represented 15% of Plaintiffs' likely recovery at trial. Id. at 3. In addition to the distribution to the class, the Settlement provided additional benefits that assisted the Settlement Class in the ongoing litigation against Avenue Capital; namely "(i) accelerated production of documents translated from Korean, which otherwise would have cost the Class several million dollars to translate; and (ii) continued availability of Settling Defendants (many of whom are foreign residents) for discovery requests from Plaintiffs as if they remained parties to the Action." Id. at 4.

Following the First Settlement, Plaintiffs continued to litigate their case against Avenue Capital, using the discovery benefits outlined above. On July 8, 2016, Plaintiffs moved for certification of their remaining claims against Avenue Capital. ECF No. 231. On December 22, 2016, the Court granted the motion, but limited the Class Period to February 1, 2012 to March 11, 2014. ECF No. 286. On January 5, 2017, Plaintiffs moved to certify a second class of shareholders who purchased MagnaChip stock during a proposed class period beginning March 12, 2014 and ending February 12, 2015 with respect to claims remaining against Avenue Capital. ECF No. 289. The Court struck Plaintiffs' motion to certify a second class. ECF No. 298.

Following several full days of mediation, Plaintiffs and Avenue Capital reached a

United States District Court
Northern District of California

settlement ("Second Settlement"). ECF No. 321 at 9. On July 6, 2017, Plaintiffs moved for preliminary approval of the Second Settlement on behalf of the class certified by the Court's December 22, 2016 Order. ECF No. 321.[1]

### C. Settlement Agreement

The Second Settlement resolves all claims between Avenue Capital and the Class, defined as follows:

> [A]ll persons who purchased or otherwise acquired MagnaChip Semiconductor Corporation ("MagnaChip" or the "Company") common stock between February 1, 2012 and March 11, 2014 (the "Class Period"), inclusive. Excluded from the Class are any parties who are or have been Defendants in this Litigation, the present and former officers and directors of MagnaChip and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any current or former Defendant has or had a controlling interest.

ECF No. 322-1 at 7.[2]

Under the Settlement, Avenue Capital has agreed to pay $6.2 million dollars ("Settlement Amount") into the Settlement Fund within thirty days of the entry of a preliminary approval order. ECF No. 322-1 at 13. The following amounts will be subtracted from the Settlement Amount: (1) taxes and tax expenses; (2) notice costs; (3) attorneys' fees and expenses; (4) service awards to the class representatives; and (5) other fees and expenses authorized by the Court. Id. at 8-9.

Class members who submit timely claims will receive payments on a pro rata basis based on the date(s) class members purchased and sold MagnaChip shares as well as the total number and amount of claims filed. Id at 59-60, 64. To calculate the amount that will be paid to each class member, the Claims Administrator will determine each claim's share of the Settlement Class Settlement Proceeds based upon the claim's recognized loss. Id. The recognized loss calculation

---

[1] Plaintiffs did not file a reply brief in support of their motion.

[2] In addition to any class member who files a request for exclusion, the class excludes "all current and former defendants, Avenue Capital's present and former parents, subsidiaries, divisions, departments, affiliates (including any investment funds it manages), stockholders, officers, directors, employees, agents, and any of their advisors, counsel, underwriters, representatives (and the predecessors, successors, insurers, administrators and assigns of each of the foregoing), MagnaChip's officers and directors during the Class Period, and all such excluded person's immediate families, legal representatives, heirs, parents, wholly-owned subsidiaries, successors, and assigns." ECF No. 322-1 at 58.

3

will depend upon several factors, "including when the MagnaChip Securities were purchased or otherwise acquired during the Class Period; in what amounts; whether those securities were sold; and if sold, when they were sold and for what amounts." Id. Before deducting any costs or attorneys' fees, the Settlement represents an average recovery of $0.24 per share of MagnaChip Securities for the 25.2 million shares outstanding as of March 11, 2014, the end of the Class Period. Id. at 55. After deductions, the recovery will be approximately $0.16 per share. Id. at 26 ("Collectively, the maximum amount of Attorneys' Fees and Expenses are estimated to average $0.06 per share of MagnaChip Securities."). No distribution will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00. Id. at 64. Any Settlement Funds not distributed to the class will be paid in equal amounts to two *cy pres* recipients: Bay Area Legal Aid and the Institute of Law and Economic Policy. Id. at 22. These two organizations were the *cy pres* recipients for the First Settlement as well. ECF No. 233 at 12.

In exchange for the settlement payment, Plaintiffs agree to release the following:

> [A]ny and all claims, rights, demands, obligations, damages, actions or causes of action, or liabilities whatsoever, of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law or regulation, that arise out of or relate in any way to the purchase or sale of MagnaChip securities during the Class Period and the acts, facts, statements, or omissions that were or could have been alleged or asserted by Plaintiffs or any member of the Class in the Action or in any other action in any court or, including Unknown Claims, except that expressly excluded from the definition of Released Claims are: (i) all claims of any Person who submits a request for exclusion from the Settlement, to the extent that the Court grants any such request; and (ii) all claims to enforce any of the terms of this Stipulation.

Id. at 10.[3]

Class members will be informed of the Second Settlement through Plaintiffs' Notice Plan, which takes into account that all Class Members already received notice of the Settlement website in connection with the First Settlement, and "that thousands of Class members have already

---

[3] The releases apply to the following "Released Persons": "Avenue Capital, its present and former parents, subsidiaries, divisions, departments, affiliates (including any investment funds it manages), stockholders, officers, directors, employees, agents, and any of their advisors, counsel, underwriters, representatives (and the predecessors, successors, insurers, administrators and assigns of each of the foregoing)." Id. at 11.

4

provided their transactional information in connection with that Settlement." ECF No. 321 at 19. The Notice Plan has four steps: "(a) publishing Notice, Summary Notice, Stipulation, Proof of Claim form, Preliminary Approval Order, and (Proposed) Final Approval Order on the Settlement website; (b) mailing postcard Summary Notice within fourteen (14) days to all identifiable Class members, advising them of the Settlement and directing them to the Settlement website for further information; (c) publishing Summary Notice twice within twenty-one (21) days on newswires with broad, national distribution; and (d) emailing Notice to all Class members that provided email addresses in connection with the prior settlement." Id. at 19; ECF No. 322-1 at 55 (Proposed Notice); ECF No. 322-1 at 71 (Proposed Summary Notice). Class Members who have already submitted a valid Proof of Claim to the Claims Administrator in connection with the First Settlement need not resubmit a claim form or evidence of their transactions in MagnaChip stock. Id. at 17. Nevertheless, a Proof of Claim form "will be made available to Class Members who have not previously submitted their transactional data." Id. at 17, 73.

Plaintiffs have also stated they intend to seek attorneys' fees Attorneys' Fees in an amount not to exceed twenty-five percent (25%) of the Gross Settlement Fund, an award of Expenses of no more than $1,100,000, and an Award to the class representatives not to exceed $2,000 each. Id. at 56.

MagnaChip reserves the right to terminate the settlement agreement "[i]f, prior to the Settlement Hearing, Persons who otherwise would be Settlement Class Members have filed with the Court valid and timely requests for exclusion ('Requests for Exclusion') from the Settlement Class . . . and such Persons in the aggregate purchased MagnaChip Securities during the Settlement Class Period in an amount greater than the amounts specified in a separate Supplemental Agreement between the Settling Parties (the 'Supplemental Agreement')." ECF No. 324-3.

## II. MOTION TO SEAL

A party seeking to seal a document filed with the court must (1) comply with Civil Local Rule 79–5; and (2) rebut "a strong presumption in favor of access" that applies to all documents other than grand jury transcripts or pre-indictment warrant materials. Kamakana v. City and

County of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation and internal quotation marks omitted).

With respect to the first prong, Local Rule 79–5 requires, as a threshold, a request that (1) establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law"; and (2) is "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79–5(b). An administrative motion to seal must also fulfill the requirements of Civil Local Rule 79–5(d). "Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Civil L.R. 79–5(d)(1)(A).

With respect to the second prong, the showing required for overcoming the strong presumption of access depends on the type of motion to which the document is attached. "[A] 'compelling reasons' standard applies to most judicial records. This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 678 (9th Cir. 2010) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 n.7 (1978)). To overcome this strong presumption, the party seeking to seal a judicial record must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." Kamakana, 447 F.3d at 1178–79 (internal citations omitted).

On the other hand, records attached to motions that are only "tangentially related to the merits of a case" are not subject to the strong presumption of access. Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1101 (9th Cir. 2016). Instead, a party need only make a showing under the good cause standard of Rule 26(c) to justify the sealing of the materials. Id. at 1097. A court may, for good cause, keep documents confidential "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

Here, the parties seek to file under seal a confidential supplemental agreement as part of a class action settlement for which they seek preliminary approval. Preliminary approval of a settlement is an issue more than tangentially related to the merits of the case, and therefore the "compelling reasons" standard applies. Kiersey v. eBay, Inc, No. 12-CV-01200-JST, 2013 WL

1  5609318, at *2 (N.D. Cal. Oct. 11, 2013) ("[A] motion seeking the Court's preliminary approval
2  of the settlement of the case may be effectively dispositive.").

"'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." Kamakana, 447 F.3d at 1179 (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). The Nixon court also noted that the "common-law right of inspection has bowed before the power of a court to insure that its records" are not used as "sources of business information that might harm a litigant's competitive standing." 435 U.S. at 598.

The parties' Motion to File Under Seal contends that the conditions under which Avenue Capital may terminate the settlement, in particular the threshold number of opt-out exclusions by class members, must remain confidential in order "to avoid enabling one or more stockholders to use this knowledge to insist on a higher payout for themselves on threat of breaking up the Settlement." ECF No. 324 at 3. This same concern motivated a similar motion to seal in connection with the First Settlement. ECF No. 220.

The Court agrees. There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts. The parties cite to several other courts that have reached a similar conclusion. ECF No. 324 at 4-5 (citing In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 948 (9th Cir. 2015) and other cases). Accordingly, the Motion to File Under Seal is granted.

### III.  MOTION FOR PRELIMINARY APPROVAL

#### A.  Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has

settled prior to class certification, the propriety of certifying the class. See Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." City of Seattle, 955 F.2d at 1276. The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079 (quotation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id. at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness. Id. Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its

8

1 entirety." Id.

**B. Discussion**

**1. Non-Collusive Negotiations**

In examining the means by which the parties arrived at the Settlement, the Court concludes that the negotiations and agreement were non-collusive. The Settlement was reached after the parties engaged in extensive motion practice, including a motion for class certification, and participated in several days of mediation. ECF No. 321 at 17. These facts support the conclusion that the Settlement is non-collusive and likely to benefit the class members. See, e.g., Harris v. Vector Marketing Corp., No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

**2. Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Although Class Counsel expresses confidence that they possess sufficient evidence to support a verdict in their favor at trial, Counsel acknowledges that Defendants continue to contest liability, and note that "even if liability is established, any verdict will be reduced by the proportionate liability provisions of the PSLRA." ECF No. 321 at 12. Of course, preparing for trial would itself be expensive and further delay any recovery to the class members. In sum, the Court concludes this factor weighs in favor of preliminary approval.

**3. The Amount Offered in Settlement**

To evaluate adequacy, courts primarily consider the plaintiffs' expected recovery balanced against the value of the settlement offer. In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Here, however, Plaintiffs state only that the Second Settlement "represents a substantial portion of the Class's likely recovery at trial," without giving a percentage figure. ECF No. 321 at 10. Plaintiffs claim that "[t]hree factors make it impossible to further quantify likely recoverable damages at trial":

> First, recovery at trial for the Class's claim under Section 20(a) would be reduced by a fraction to be determined by the jury under the proportionate liability provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). See 15 U.S.C. §78u-4(f)(2)(B)(1). Second, the Parties vigorously dispute whether Class Period purchasers could recover for post-Class Period damage events, which would substantially impact the amount of aggregated damages under

9

Section 20(a). Third, at trial, Class Members with both Section 20(a) claims and Section 20A claims would have to elect which remedy to pursue.

Id. at 10 n.3.

Plaintiffs do not cite any case where a court has preliminarily approved a settlement absent some estimate of how the settlement compares to potential recovery at trial. Indeed, this Court previously denied a motion preliminary approval where the plaintiffs "provide[d] no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims." Cordy v. USS-Posco Indus., No. 12-CV-00553-JST, 2013 WL 4028627, at *4 (N.D. Cal. Aug. 1, 2013). The Court acknowledged that "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." Id. (quoting In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000)). Nonetheless, the Court explained that "any fraction has a denominator, and without knowing what it is the Court cannot balance plaintiffs' expected recovery against the proposed settlement amount." Id.; see also Peel v. BrooksAmerica Mortg. Corp., No. SACV1179JLSRNBX, 2013 WL 12133883, at *5 (C.D. Cal. Oct. 29, 2013) (Plaintiffs provide the Court with no estimate of their expected recovery at trial and little substantive information regarding the strengths and weaknesses of their case. . . . Without more detailed information regarding Plaintiffs' expected recovery, the Court is not in the position to assess whether the settlement falls within the range of possible approval."). Here, Plaintiffs have not even attempted to provide "hypothetical scenarios," Stovall-Gusman v. W.W. Grainger, Inc., No. 13-CV-02540-JD, 2014 WL 5492729, at *2 (N.D. Cal. Oct. 30, 2014), that could produce various expected recoverable damages to measure against the proposed settlement amount. Given the lack of information in Plaintiffs' motion, the Court cannot determine, even preliminarily, whether the amount offered in settlement is adequate.

### 4. The Extent of Discovery Completed and the State of the Proceedings

The parties have conducted extensive discovery in this case. In particular, thanks to the discovery benefits that were a part of the First Settlement, Plaintiffs "obtained and reviewed hundreds of thousands of pages of documents and deposed (or defended the depositions of) more than a dozen fact and expert witnesses, including seven (7) depositions taken over a span of under

10

two months in the Republic of Korea, where MagnaChip is headquartered." ECF No. 321 at 8. The Court agrees that this discovery process has allowed the parties to gather "sufficient information to make an informed decision about the settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000).

### 5. The Experience and Views of Counsel

Based on his litigation of this case and experience with other securities cases, Class Counsel believes the Second Settlement is "fair, reasonable, and adequate." ECF No. 321 at 16. This weighs in favor of its approval.[4]

### 6. Preferential Treatment

Under this factor, the Court looks at whether the settlement agreement provides preferential treatment to any class member. Under the Second Settlement, class members who submit timely claims will receive payments on a pro rata basis based on the date(s) class members purchased and sold MagnaChip shares as well as the total number and amount of claims filed. Id at 59-60, 64. That some Class members will receive a larger payment than others based on the number of shares they held and when those shares were bought and sold makes sense in this case and does not constitute improper preferential treatment.

### 7. The Presence of Obvious Deficiencies

The Court has reviewed the Second Settlement and identifies one obvious deficiency. In their proposed order and final judgment, the parties include the following language: "The Court further finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, were fully discharged and that the statutory waiting period has elapsed." ECF No. 322-1 at 83. But neither the Second Settlement nor the motion for preliminary approval contain any indication that the parties actually complied with their obligations to notify the appropriate federal and state officials. The Court identified a similar deficiency in the First Settlement, which the parties

---

[4] The Court considers this factor, as it must, but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." Principles of the Law of Aggregate Litigation § 3.05 comment a (2010).

11

1 ultimately corrected. ECF No. 233 at 10.

### 9. Fairness of Supplemental Agreement

The Court, having granted the motion to seal, must separately review the fairness of the Confidential Supplemental Agreement. As this Court has noted before, the existence alone of a provision allowing Magnachip to terminate the settlement does not render the settlement unfair. ECF No. 233 at 12-13. Having reviewed the supplemental agreement under seal, the Court concludes that the termination provision is fair and reasonable.

\* \* \*

The Court denies the motion for preliminary approval based on an inability to determine whether the settlement is adequate, and based on the apparent failure to comply with CAFA's notice requirements.

## IV. NOTICE

The Court must separately evaluate the proposed notice procedure. Under Federal Rule of Civil Procedure 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, as described above, Class members will be informed of the Second Settlement through Plaintiffs' Four-Step Notice Plan: "(a) publishing Notice, Summary Notice, Stipulation, Proof of Claim form, Preliminary Approval Order, and (Proposed) Final Approval Order on the Settlement website; (b) mailing postcard Summary Notice within fourteen (14) days to all identifiable Class members, advising them of the Settlement and directing them to the Settlement website for further information; (c) publishing Summary Notice twice within twenty-one (21) days on newswires with broad, national distribution; and (d) emailing Notice to all Class members that

provided email addresses in connection with the prior settlement." Id. at 19; ECF No. 322-1 at 55 (propose Notice); ECF No. 322-1 at 71 (proposed Summary Notice). The proposed Notice contains all of the information required by Rule 23(c)(2)(B).

The Court preliminarily approves the Notice Plan.

## V. ALLOCATION PLAN

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." In re Oracle Sec. Litig., No. C–90–0931–VRW, 1994 WL 502054, at *1–2 (N.D. Cal. June 16, 1994) (citing Class Pls. v. City of Seattle, 955 F.2d 1268, 1284–85 (9th Cir. 1992)).

Substantively, the allocation plan for the Second Settlement tailors the recovery of each class member to "the time frame in which they both purchased and sold (or continued to hold) MagnaChip stick." ECF No. 321 at 18. This method is fair and reasonable because it "takes into account the fact that investors were informed of the full scope of the fraudulent scheme through a series of corrective disclosures." Id. This type of pro rata distribution has frequently been determined to be fair, adequate, and reasonable. See In re TFT-LCD (Flat Panel) Antitrust Litig., No. M 07-1827 SI, 2013 WL 1365900, at *4 (N.D. Cal. Apr. 3, 2013) (approving similar plan of distribution); In re Vitamins Antitrust Litig., No. 99-197 TFH, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable."); Rosenburg v. I.B.M., No. CV06-00430PJH, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007) (explaining that "the proposed plan is rationally related to the relative strengths and weaknesses of the respective claims asserted").

Procedurally, the Second Settlement will be distributed among Class members who filed proofs of claim in response to the First Settlement or the Second Settlement. Class Members who have already submitted a valid Proof of Claim to the Claims Administrator in connection with the First Settlement need not resubmit a claim form or evidence of their transactions in MagnaChip stock. Id. at 17. Nevertheless, as a part of the Notice Plan for the Second Settlement, a Proof of

13

Claim form "will be made available to Class Members who have not previously submitted their transactional data." Id. at 17, 73. This allocation plan properly attempts to limits administrative costs by using information already obtained from Class members during the First Settlement.

The Court preliminarily approves the allocation plan.

**CONCLUSION**

The Motion to File Under Seal is granted. The Motion for Preliminary Approval of Partial Class Action Settlement is denied. A renewed motion for preliminary approval is due by November 10, 2017.

IT IS SO ORDERED.

Dated: October 20, 2017

_____
JON S. TIGAR
United States District Judge