**POMERANTZ LLP**
Patrick V. Dahlstrom
Joshua B. Silverman
Louis C. Ludwig
10 South LaSalle, Ste. 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com
jbsilverman@pomlaw.com
lcludwig@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (CSB# 219683)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: lrosen@rosenlegal.com

*Class Counsel*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH THOMAS, RICHARD HAYES, HERB SMITH, and OKLAHOMA POLICE PENSION & RETIREMENT SYSTEM,<br><br>Plaintiffs,<br><br>v.<br><br>MAGNACHIP SEMICONDUCTOR CORP. SANG PARK, TAE YOUNG HWANG, MARGARET SAKAI, R. DOUGLAS NORBY, ILBOK LEE, NADER TAVAKOLI, RANDAL KLEIN, MICHAEL ELKINS, AVENUE CAPITAL MANAGEMENT II, L.P., BARCLAYS CAPITAL INC., DEUTSCHE BANK SECURITIES INC., CITIGROUP GLOBAL MARKETS INC., UBS SECURITIES LLC and NEEDHAM & COMPANY, LLC,<br><br>Defendants. | Case No.: Case No: 3:14-cv-01160-JST<br>**NOTICE OF MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br>Date: May 10, 2018<br>Courtroom: 9 – 19th Floor<br>Time: 2:30 p.m.<br>Judge: Hon. Jon S. Tigar |

i

PLEASE TAKE NOTICE that at 2:30 p.m. on May 10, 2018, or as soon thereafter as counsel may be heard, before the Honorable Jon S. Tigar, in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Lead Plaintiffs and Class Representatives Keith Thomas ("Thomas") and Herb Smith ("Smith") ("Class Plaintiffs") hereby will move for an order awarding attorneys' fees, authorizing reimbursement of expenses for Class Counsel, and reimbursement to Class Plaintiffs for their time and expense in prosecuting claims against the remaining Defendant, Avenue Capital Management II, L.P. ("Avenue Capital").

The grounds for this motion are that the requested award of fees and expenses to Class Counsel are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases, and are consistent with the retainer agreements between Class Counsel and Class Plaintiffs.

This motion is supported by the accompanying Memorandum of Points and Authorities; the Joint Declaration of Laurence M. Rosen and Joshua B. Silverman in Support of Motion for an Order Granting Final Approval of Class Action Settlement; and the exhibits filed therewith.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether consideration of the relevant factors justifies a fee award of 25% of the Gross Settlement Fund.

2.    Whether Class Counsel's expenses were reasonable and necessarily incurred to achieve the benefit obtained.

3.    Whether Class Plaintiffs should receive an award in the amount of $1,500 each.

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    SPECIFIC EFFORTS OF CLASS COUNSEL ....................................................3

III.   REASONABLE PERCENTAGE OF THE "COMMON FUND" RECOVERED IS AN
       APPROPRIATE APPROACH TO AWARDING ATTORNEYS' FEES .....................5

   A.  The Common Fund Doctrine .............................................................................5

   B.  The Percentage-of-Fund Approach ....................................................................6

   C.  The Benchmark Award In This Circuit Is 25% ................................................7

IV.    A  BENCHMARK  AWARD  OF  25%  OF  THE  SETTLEMENT  FUND  IS
       REASONABLE IN THIS CASE..........................................................................8

   A.  Class Counsel Achieved An Excellent Result For The Class...........................8

   B.  The Risks Of The Litigation ..........................................................................10

   C.  The Skill Required And The Quality And Efficiency Of The Work ...............11

   D.  The Contingent Nature Of The Case And The Financial Burden Carried By  The Class
       Counsel..........................................................................................................11

   E.  The Customary Fee ........................................................................................12

   F.  A Lodestar Cross-Check Shows the Fee Request Is Reasonable ...................13

   G.  The Reaction Of The Class Supports The Requested Award ..........................14

V.     CLASS  COUNSEL'S  EXPENSES  ARE  REASONABLE  AND  WERE  NECESSARY
TO ACHIEVE THE BENEFIT OBTAINED ...............................................................15

VI.    THE AWARD TO CLASS PLAINTIFFS SHOULD BE APPROVED ......................17

VII.   CONCLUSION...................................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**                                                                      **Page(s)**

*Arenson v. Bd. of Trade*,
   372 F. Supp. 1349 (N.D. Ill. 1974) ...................................................................... 11

*Blum v. Stevenson*,
   465 U.S. 886 (1984) ........................................................................................... 6, 12

*Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK,
   2011 WL 4526673 (N.D. Cal. June 30, 2011) ...................................................... 17

*California v. Infineon Techs. AG (In re Dynamic Random Access Memory*
   *(DRAM) Antitrust Litig.)*, No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS
   190974 (N.D. Cal. Oct. 30, 2013) ......................................................................... 14

*Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196
   (N.D. Cal. Feb. 11, 2016) ............................................................................... 15, 17

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) .......................................................................... 14

*Eltman v. Grandma Lee's Inc.*,
   1986 WL 53400 (E.D.N.Y. May 28, 1986) ........................................................... 11

*Fischel v. Equitable Life Assur.*,
   307 F.3d 997 (9th Cir. 2002) ................................................................................. 13

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   741 F. Supp. 84 (S.D.N.Y. 1990) .......................................................................... 17

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ..................................................................................... 16

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................................. 8

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................... 6, 7

*In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM (JCGx),
   2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) ................................... 13

*In re Ashanti Goldfields Sec. Litig.*, Civil Action No. CV-00-717 (DGT), 2005 U.S. Dist.
   LEXIS 28431 (E.D.N.Y. Nov. 15, 2005) .............................................................. 16

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005)..................................................................................7

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...............................................................................6

*In re Dairy Farmers of Am., Inc.*,
    80 F. Supp. 3d 838 (N.D. Ill. 2015) ....................................................................8

*In re Equity Funding Corp. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) .................................................................11

*In re Fannie Mae Sec., Derivative, & ERISA Litig.*, 4 F. Supp. 3d 94 (D.D.C. 2013) .................16

*In re Galena Biopharma, Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 82693
    (D. Or. June 24, 2016) ......................................................................................18

*In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS
    13627, at *48-50 (C.D. Cal. June 10, 2005) ....................................................15

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)........................................................16, 17

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976).....................................................................8, 11

*In re M.D.C. Holdings Sec. Litig.*,
    1990 WL 454747 (S.D. Cal. 1990) ....................................................................12

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
    842 F. Supp. 733 (S.D.N.Y. 1994)......................................................................17

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...............................................................................7

*In re Mercury Interactive Corp. Sec. Litig.*, No. 5:05-CV-03395-JF,
    2011 WL 826797 (N.D. Cal. Mar. 3, 2011)......................................................13

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................10, 11, 13

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .................................................................................7

*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist.
    LEXIS 88886 (N.D. Cal. Nov. 26, 2007) ..........................................................14

*In re Puda Coal Inc. Sec. Litig.*, No. 11-CV-2598, Order dated June 22, 2016

v

(ECF No. 615) (S.D.N.Y.) ...............................................................................16

*In re Select Comfort Corp. Secs. Litig.*, No. 99-884
(D. Minn. Feb. 28, 2003) ................................................................................ 8

*In re SilverCorp Metals, Inc., Securities Litigation*, 12-cv-9456
(Feb. 13, 2015 S.D.N.Y.) ................................................................................ 8

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989)................................................................. 7

*In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*,
631 F.3d 913 (8th Cir. 2011) ...................................................................... 17

*In re Veritas Software Corp. Sec. Litig.*,
396 Fed. App'x 815 (3d Cir. 2010)............................................................. 17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .................................................. 5, 8, 10, 12

*In re Wireless Facilities, Inc. Sec. Litig. II.*, No. 07cv482 NLS, 2008 U.S. Dist. LEXIS
128674, at *24 (S.D. Cal. Dec. 19, 2008)................................................. 13

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ................................................................ 6, 12

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
540 F.2d 102 (3d Cir. 1976)......................................................................... 10

*Morris v. Lifescan, Inc.*,
54 Fed. App. 663, 664 (9th Cir. 2003)................................................... 7, 8

*Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC(MLGx), 2014 U.S. Dist.
LEXIS 63312 (C.D. Cal. May 6, 2014) ......................................................7

*Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 U.S. Dist. LEXIS 146949
(S.D. Cal. Oct. 23, 2015) .............................................................................. 7

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ............................................................. 5, 6, 7

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) .................................................................... 7

*Ratner v. Bennett*,
1996 WL 243645 (E.D. Pa. May 8, 1996) .............................................. 8

vi

*Schulte v. Fifth Third Bank*,
    2011 WL 3269340 (N.D. Ill. July 29, 2011)...................................................................8

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ...........................................................................6

*Steiner v. Am. Broad. Co.*, 248 F. App'x 780 (9th Cir. 2007)........................................14

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW,
    2014 WL1309692 (N.D. Cal. Mar. 31, 2014)................................................ 14

*Thornberry v. Delta Air Lines*,
    676 F.2d 1240 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983)..................17

*Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS
176183 (C.D. Cal. Oct. 24, 2017) ...................................................................... 13

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ...........................................................................6

*Van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx), 2017 U.S. Dist. LEXIS
    18800 (C.D. Cal. Feb. 8, 2017) ..................................................................... 13

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ...........................................................................5

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................................... 13

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ........................................................................8

### Statutes

15 U.S.C. 78u-4(f)(2)(B)-(3)(A)...........................................................................7, 9, 17

PSLRA .........................................................................................................7, 9, 17

### Rules

Federal Rule of Civil Procedure 23(e) ........................................................................ 1

### Other Authorities

Richard Posner, *Economic Analysis of Law*, §21.9 (3d ed.1986) ............................... 12

Plaintiffs' Motion For Attorneys' Fees and Expenses 3:14-cv-01160-JST

## MEMORANDUM OF POINTS AND AUTHORITIES

Class Plaintiffs, through their undersigned counsel, submit this memorandum of law in support of their Motion, pursuant to Federal Rule of Civil Procedure 23(e), for an Order: (1) awarding attorneys' fees of 25% of the Gross Settlement Fund, or $1,550,000; (2) granting reimbursement of $795,401.42 in litigation expenses; and (3) awarding Class Plaintiffs $1,500 each. The requests here relate only to time and expenses incurred in the continuing prosecution of this Action, and do not duplicate any time or expense previously submitted to the Court.

## I.      INTRODUCTION[1]

Class Counsel, having already secured a $23.5 million settlement for Class Members from the primary perpetrators of the fraud at issue in this Action, has now achieved an additional $6.2 million cash settlement against Avenue Capital, a secondary violator added in the most recent amended complaint in this Action. The efforts of Class Counsel to achieve this settlement are more fully set forth in the Joint Declaration of Laurence M. Rosen and Joshua B. Silverman filed herewith ("Joint Decl."). Class Counsel requests an award of fees in the amount 25% of the Gross Settlement Fund or $1,550,000 and an award of $1,500 each to Class Plaintiffs. Class Counsel also requests reimbursement from the Gross Settlement Fund of $795,401.42 in expenses incurred.

The current Settlement represents between 11.2% and 15.6% of Class Plaintiffs' ***best case*** estimate of damages recoverable from Avenue Capital (after accounting for proportional allocation of damages), above and beyond the $23.5 million previously recovered for the Class. It is a satisfactory result by any measure, but particularly so when viewed in light of the considerable risks of summary judgment, trial, and appeal. *See* Joint Decl., ¶¶ 50-58. This

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement dated June 14, 2017 (filed July 6, 2017, Dkt. 322-1) (the "Stipulation").

recovery is the product of hard-fought negotiations over an approximately one-year period. The Parties did not reach an agreement until after extensive discovery in both the United States and the Republic of Korea, after Class Plaintiffs had obtained class certification, and after the Parties had exchanged expert reports.[2]  Subsequently, the Parties agreed to settle this dispute in its entirety for a cash payment of $6.2 million.  *Id.* ¶ 6.

The reaction of the Class strongly supports the requested fees and expenses.  The deadline to file objections and to request exclusion to the Settlement is April 19, 2018.  To date, no objections and only one request for exclusion has been received.  Declaration of Josephine Bravata Concerning Notice Dissemination and Publication, attached as Ex. 1 to the Joint Decl. ("SCS Decl.") ¶¶ 13-14.  Pursuant to the Preliminary Approval Order, over 45,000 Notice forms were mailed to Class Members.  *See* SCS Decl., ¶ 6.  The Notice advised Class Members that Class Counsel intended to apply to the Court for an award of attorneys' fees representing up to 25% of the Gross Settlement Fund and an award to Class Plaintiffs not to exceed $2,000 each, and that Class Counsel would seek reimbursement of their out-of-pocket expenses not to exceed $1,100,000.  *E.g.*, SCS Decl., Ex. A.

The fairness and reasonableness is confirmed when cross-checked with Class Counsel's lodestar.  Class Counsel spent a total of approximately 3,500 hours of professional time having a market value of approximately $2,187,704.25 in continuing to prosecute the claims remaining in this litigation following the prior settlement, resulting in a negative lodestar multiplier of approximately 0.71.

The Settlement could not have been achieved but for Class Plaintiffs' and Class Counsel's persistent and extensive litigation of this matter. While the Parties engaged in multiple in-person mediation sessions and frequent additional settlement negotiations, the

---

[2] The Ninth Circuit has held that settlements obtained prior to class certification warrant additional scrutiny.  *Staton v. Boeing Co.*, 327 F.3d 938, 952-53 (9th Cir. 2003).  Such scrutiny is unnecessary here as a direct result of Class Counsel's efforts.

Settlement Amount was proposed and accepted only after a class had been certified and further additional discovery had been obtained for the benefit of the Class.  Joint Decl. ¶ 28.

For the reasons set forth more fully below, Class Counsel respectfully submit that such attorneys' fees and expenses are fair and reasonable under applicable legal standards and in light of the contingency risk undertaken, and should be awarded by the Court.

## II.   SPECIFIC EFFORTS OF CLASS COUNSEL

This brief description of the Action reveals not only the complexities of the case, but also the host of factual and legal issues that Class Counsel had to convincingly address in order to achieve the Settlement. As explained in the Joint Declaration (¶¶ 17-37; 61), in addition to the efforts previously identified to the Court, to achieve the Settlement with Avenue Capital, Class Counsel:

- Briefed a motion for class certification;
- Defended the depositions of Thomas and Smith;
- Met and consulted with experts in preparation for expert reports and expert discovery;
- Defended the deposition of Class Plaintiffs' expert on market efficiency, Dr. Zachary Nye, Ph.D.
- Took the deposition of Defendant's expert on market efficiency, Dr. Paul A. Gompers;
- Argued the motion for class certification;
- Succeeded in obtaining certification of the Class;
- Briefed issues related to certifying a second class;
- Prepared and served comprehensive document requests upon Avenue Capital;
- Served subpoenas on additional third-parties;
- Obtained and served letters rogatory upon MagnaChip's Korean auditor;
- Obtained and reviewed hundreds of thousands of pages of documents from Defendants in the Action and third parties;
- Engaged in meet-and-confer discussions and correspondence with Avenue Capital regarding the Parties' responses to discovery requests, the scope of their document productions, and assertions of privilege;
- Deposed more than a dozen fact and expert witnesses, including seven (7) depositions taken over a span of under two months in the Republic of Korea over the course of two week-long trips by three attorneys, where MagnaChip is headquartered;

3

- Responded to Defendant's discovery requests directed to Class Plaintiffs and Class Plaintiffs' experts;

- Prepared to take additional U.S. depositions of key Avenue Capital personnel;

- Consulted with accounting and auditing experts concerning the accounting fraud alleged in the TAC;

- Consulted with economic experts in the areas of loss causation, market efficiency, and damages;

- Consulted with a financial expert regarding the role of investor appointees on boards and regarding distressed investing generally;

- Drafted a response to Avenue Capital's motion to exclude Class Plaintiffs' financial expert;

- Prepared for and participated in a full-day mediation process with a nationally regarded third-party neutral, the Hon. Layn R. Phillips (Ret.), including drafting opening mediation statements;

- Engaged in further mediation efforts supervised by Michelle Yoshida, an experienced mediator working with Judge Phillips;

- Participated in continued negotiation efforts over the months following the mediation to achieve and finalize the Settlement and document it in the Stipulation.

- Obtained a $6.2 million settlement – in addition to the previous $23 million settlement – following arm's-length negotiations with Defendant;

- Consulted with experts regarding the plan of allocation and support for preliminary approval of the Settlement; and

- Prepared the documents required for preliminary and final approval of the Settlement.

Class Counsel's effort to successfully resolve the remaining claims against Avenue Capital has been without compensation of any kind. Payment of attorneys' fees and reimbursement of expenses were, and always have been, wholly contingent upon the result achieved. *Id.* ¶ 59. As compensation for these efforts, Class Counsel requests that this Court award attorneys' fees of 25% of the Gross Settlement Fund, or $1,550,000, plus reimbursement of $795,401.42 in out-of-pocket litigation expenses. Class Counsel's 25% fee request tracks the benchmark in this Circuit, and is less than Class Counsel's actual lodestar.

Finally, the Court should consider the Class Members' reaction to the award sought. 45,537 Court-approved Notices were mailed to potential and existent members of the Class. *See* SCS Decl., ¶ 6. The Notice advised Class Members of the terms of this Settlement, that

Class Counsel could apply for a fee of up to 25% of the Gross Settlement Fund, that Class Counsel could seek reimbursement of litigation expenses of up to $1.1 million, and that Class Plaintiffs could seek an award not to exceed $2,000 each.  *Id.*, Ex. B.  The Notice also advised Class Members' of their right to object and/or opt out.  *Id.*  The deadline to object or request exclusion is impending and to date, there have been no objections to the fee and expense requests, or any other part of the Settlement, and there has been only one (1) request for exclusion (that did not comply with the Court's requirement for supporting information).  *See id.*, ¶¶ 13-14.  Accordingly, the overwhelming support of the Class, and the other reasons set forth herein, demonstrate that the requested attorneys' fees and expenses and award to Class Plaintiffs are fair and reasonable.

## III.    REASONABLE PERCENTAGE OF THE "COMMON FUND" RECOVERED IS AN APPROPRIATE APPROACH TO AWARDING ATTORNEYS' FEES

### A.    The Common Fund Doctrine

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("*Paul, Johnson*"), the Ninth Circuit explained the equitable principle underlying such fee awards:

> Since the Supreme Court's 1885 decision in *Central Railroad. & Banking Co. of Ga. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. [...] The amount of such a reward is that which is deemed "reasonable" under the circumstances.

(Emphasis in original; citations omitted). The purpose of this "common fund" doctrine is to avoid unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

1

### B.    The Percentage-of-Fund Approach

2

3    In *Blum v. Stevenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized

4    that under the common fund doctrine a "reasonable" fee may be based "on a percentage of the

5    fund bestowed on the class." In *Paul, Johnson*, 886 F.2d 268, *Six Mexican Workers v. Arizona*

6    *Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d

7    1370 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage-of-

8    recovery method in common fund cases.

9    Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost

10   uniformly shifted to the percentage method in awarding fees in representative actions. There

11   are compelling reasons why so many courts have opted for the percentage approach in common

12   fund cases. First, it is consistent with the practice in the private marketplace where contingent

13   fee attorneys are customarily compensated by a percentage of the recovery.[3] Second, it more

14   closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in

15   achieving the maximum possible recovery in the shortest amount of time required under the

16   circumstances.[4] Third, use of the percentage-of-recovery method decreases the burden imposed

17   on the court (by avoiding a detailed and time-consuming lodestar analysis), while assuring that

18   the beneficiaries do not experience unnecessary delay in receiving their share of the settlement.

19

20

21

22

23   [3]   *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled
     to the fee they would have received had they handled a similar suit on a contingent fee basis,
24   with a similar outcome, for a paying client."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373
     (N.D. Cal. 1989) (noting that in the marketplace, attorneys and their clients routinely negotiate
25   25% to 40% percentage fees).

26   [4]   *See Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) ("The lawyer gains only to the
     extent his client gains[,] ....ensur[ing] a reasonable proportion between the recovery and the fees
27   assessed to the defendant . . . . reward[ing] exceptional success . . . penaliz[ing] failure . . . [and]
     automatically handl[ing] compensation for the uncertainty of litigation.").

28

1    *See In re Activision Secs. Litig.*, 723 F. Supp. at 1378-79.[5]

2        Indeed, the plain text of the PSLRA states that class counsel is entitled to attorneys'

3 fees that represent a "reasonable percentage" of the damages recovered by the class. *See* 15

4 U.S.C. § 78u-4(a)(6). *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n. 7 (3d Cir.

5 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether

6 attorney's fees are reasonable.").

7    **C.**      **The Benchmark Award In This Circuit Is 25%**

8        In *Paul, Johnson*, 886 F.2d at 273, the Ninth Circuit originally established 25% of the

9 fund recovered as the "benchmark" award to be adjusted upward or downward depending on the

10 circumstances of the particular case. *Accord Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th

11 Cir. 2000); *but see Activision*, 723 F. Supp. at 1377 ("This court's review of recent reported

12 cases discloses that nearly all common fund fee awards range around 30% even after thorough

13 application of either the lodestar or twelve-factor method."); *see also Patel v. Axesstel, Inc.*, No.

14 3:14-CV-1037-CAB-BGS, 2015 U.S. Dist. LEXIS 146949, at *21 (S.D. Cal. Oct. 23, 2015)

15 (awarding 30% fees in a securities fraud class action based on "the complexity of securities

16 litigation, the lodestar crosscheck, and the lack of any objection from the class members …." );

17 *Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC(MLGx), 2014 U.S. Dist. LEXIS

18 63312, at *30 (C.D. Cal. May 6, 2014) (adjusting benchmark upward to award 28% fee in

19 securities fraud class action). Indeed, it is not unusual for courts to award fees in excess of 30%

20 in appropriate circumstances. *See, e.g., Morris v. Lifescan, Inc.*, 54 Fed. App. 663, 664 (9th Cir.

21 2003) (approving 33% fee); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)

22 (approving fee equal to 33% percent of a $12 million settlement fund); *In re Mego Fin. Corp.*

23

24

25 _____

26 [5]  *See also In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 170

27 (S.D.N.Y. 1989) ("straight contingent fee awards [are] bereft of largely judgmental and time-

28 wasting computations of lodestars and multipliers").

1    *Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of 33.3% of $1.725 million

2    settlement).[6]

3        The guiding principle remains that a fee award should be "reasonable under the

4    circumstances." *WPPSS*, 19 F.3d at 1296 (citation omitted).  The attorneys' fee requested here

5    is in line with the Ninth Circuit benchmark, and is well within the range of percentages courts

6    in this Circuit have awarded in similar securities class action settlements.

7    **IV.    A BENCHMARK AWARD OF 25% OF THE SETTLEMENT FUND IS
         REASONABLE IN THIS CASE**

8

9        **A.    Class Counsel Achieved An Excellent Result For The Class**

10       In this case, although the excellent result obtained for the Class might warrant an

11   upward adjustment, Plaintiffs only seek to be awarded the benchmark 25% fee.  Courts have

12   consistently recognized that the result achieved is a major factor to be considered in making a

13   fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the

14   degree of success obtained"); *Morris*, 54 Fed. Appx. at 664 (district court, granting a 33% fee,

15   noted that class counsel achieved exceptional results in a risky and complicated class action);

16   *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("[T]he amount of

17   recovery, and end result achieved are of primary importance, for these are the true benefit to

18   the client").

19

20

21   _____

[6] Courts in other jurisdictions also routinely award fees of 25% or more in similarly sized

22   settlements. *E.g., In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 842 (N.D. Ill.
     2015)(awarding 33-1/3% of $46 million settlement fund); *In re SilverCorp Metals, Inc.,*

23   *Securities Litigation*, 12-cv-9456 (Feb. 13, 2015 S.D.N.Y.)(awarding 25% of a $14 million
     settlement); *Schulte v. Fifth Third Bank*, 2011 WL 3269340, at *31 (N.D. Ill. July 29, 2011)

24   ("A number of fee awards in common-fund cases from within the Seventh Circuit show that an
     award of 33-1/3% of the settlement fund is within the reasonable range"; approving 33.3% of

25   $9.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999)
     (one-third award of $40 million); *Ratner v. Bennett*, 1996 WL 243645 (E.D. Pa. May 8, 1996)

26   (35% award in securities action of $400,000); *In re Select Comfort Corp. Secs. Litig.*, No. 99-
     884 (D. Minn. Feb. 28, 2003) (awarding 33.3% of the $ 5,750,000 settlement).

27

28

The payment of $6.2 million in cash to the Class provides an excellent recovery under the circumstances.  The Settlement supplements the previous $23.35 million recovery from primary wrongdoers with an additional $6.2 million from Avenue Capital, creating a total recovery for MagnaChip investors of $29.7 million. *See* Joint Decl. ¶ 10.

Class Plaintiffs' preliminary approval filings discussed Plaintiffs' estimation, after consulting with experts, that the maximum aggregate Class damages if the Class prevailed at trial would be approximately $158.4 million, only a fraction of which could be recoverable from Avenue Capital under the PSLRA's proportional liability cap, 15 U.S.C. §78u-4(f)(2)(B)(1).  *See* ECF No. 331 at 4; ECF No. 335 at 1.  Plaintiffs further explained their view that if the Class prevailed at trial, a jury would likely allocate no more than 25% to 35% of proportional liability (and perhaps much less) to Avenue Capital, which did not directly participate in the fraud.  *Id.*; ECF No. 335 at 2.  Accordingly, Class Plaintiffs calculated that a best-case result at trial would yield a recovery of between $39.6 million to $55.4 million.  *Id.*; ECF No. 335 at 2.  The $6.2 million Settlement represents between 11.2% and 15.6% of damages likely recoverable from Avenue Capital if the Class achieved a highly favorable outcome at trial.  *Id.*    *See* ECF No. 331 at 5; ECF 335 at 2.  Therefore, the Settlement represents a significant recovery (especially considering that Class Members have already shared in the $23.5 million settlement with other defendants).

This Settlement compares favorably with the median securities class action settlement between 2007 and 2016.  According to Stanford University and Cornerstone Research, a defendant-oriented economic consultancy, the median securities class action settlement during those years ranged between 1.8% and 2.8% of estimated damages.[7]   As another court in this District has noted, a recovery of 6% compares favorably with the median settlement.  *In re*

---

[7]  *See*  http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf, pp. 7.

*Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"). The much higher percentage recovery here of 11.2% to 15.6% of damages is an outstanding result for the Class, and justifies at least a benchmark award of 25%.

### B.    The Risks Of The Litigation

Numerous cases have recognized that the risks of litigation are important factors in determining a fee award. *See, e.g., WPPSS*, 19 F.3d at 1299-1300; *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). Here, Class Plaintiffs faced significant risks as to both liability and damages. A jury might easily find that Avenue Capital bore no responsibility for the fraud, or the Court might rule that damages following the end of the shortened Class Period it certified are not available, which would slash recoverable damages by more than two-thirds.

In addition, Class Plaintiffs faced other considerable risks at trial. The claims against Avenue Capital are difficult because it is, at most, a control person—not a primary violator under the federal securities laws. Moreover, the transactions and accounting violations at issue in this Action are complex, and involve Korean-language documents and Korean witnesses. Accordingly, Class Plaintiffs' claims could prove difficult to present to a jury. *See* Joint Decl. ¶ 52. Class Plaintiffs would also face trial challenges concerning proof of control, loss causation, scienter, liability, and damages, and, even if successful there, would have still faced the risk of losing any recovery to an unfavorable ruling in a dispositive post-trial motion or a reversal of the verdict on appeal. *See* Joint Decl. ¶¶ 51-55.

Given the various risks in this Action and the strengths and weaknesses of the claims asserted against Avenue Capital, a secondary defendant, the additional $6.2 million Settlement secured is highly favorable and in the best interests of the Class. *See* Joint Decl. ¶ 58.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    The Skill Required And The Quality And Efficiency Of The Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities" – particularly in securities class actions.  *Omnivision*, 559 F. Supp. 2d at 1047. Here, the quality of Class Counsel's work on this case is reflected in the excellent result obtained. The standing and prior experience of Class Counsel are relevant in determining fair compensation. *See, e.g., Eltman v. Grandma Lee's Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986).  The Joint Declaration includes a description of the background and experience of Class Counsel. *See* Exs. 2 & 3 to Joint Decl.  As that submission demonstrates, Class Counsel has extensive and significant experience in the highly specialized field of securities class action litigation.

The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974).  Class Plaintiffs were opposed in this litigation by the nationally respected firm of Akin Gump Strauss Hauer & Feld LLP, which mounted a skillful and aggressive defense.  *See* Joint Decl. ¶ 64.

At every stage of the proceedings, Class Counsel had to perform with a high level of skill, efficiency, and professionalism. In the face of strong opposition from a highly respected securities defense firm, Class Counsel successfully conducted effective discovery in both United States and Korea, obtained class certification, and settled the remaining claims in this Action on an excellent basis for the Class. Such quality, efficiency, and dedication should be rewarded.

### D.    The Contingent Nature Of The Case And The Financial Burden Carried By Class Counsel

The Ninth Circuit recognizes that the determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement:

11

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.

*See* Richard Posner, *Economic Analysis of Law*, §21.9, at 534-35 (3d ed.1986). Contingent fees in risky cases that may exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Class Counsel has received no compensation over the course of the litigation against Avenue Capital as the sole remaining Defendant and has incurred significant expenses in litigating for the benefit of the Class. Any fee award or expense reimbursement to Class Counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any award. *See* Joint Decl. ¶ 65.

### E.    The Customary Fee

If this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Kirchoff*, 786 F.2d at 323 (40% contractual award if case had gone to trial). Thus, as the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is even greater than the percentage-of-recovery fee requested in this case, Class Counsel's request is quite reasonable.

Class Counsel's efforts at obtaining a recovery from Avenue Capital as the last remaining Defendant were performed and the result was achieved on a wholly contingent basis, despite significant risk and in the face of determined opposition. Under these circumstances, it necessarily follows that Class Counsel is justly entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained. The

12

fee requested is within the range of fees awarded by the courts in the Ninth Circuit in cases with similar recoveries. *See, e.g., Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183, at *14 (C.D. Cal. Oct. 24, 2017) (granting request for 25% fee where settlement fund totaled $7 million); *Van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx), 2017 U.S. Dist. LEXIS 18800, at *36 (C.D. Cal. Feb. 8, 2017) (approving 25% fee for $3 million settlement); *In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548, at *88 (C.D. Cal. July 28, 2014) (awarding 25% fee in $4.8 million settlement); *In re Wireless Facilities, Inc. Sec. Litig. II.*, No. 07cv482 NLS, 2008 U.S. Dist. LEXIS 128674, at *24 (S.D. Cal. Dec. 19, 2008) (approving 25% fee where case settled for $4.5 million).

Under all of the circumstances present here, a 25% fee plus expenses is fair and reasonable.

### F.  A Lodestar Cross-Check Shows the Fee Request Is Reasonable

Courts often compare an attorney's lodestar with a fee request made under the percentage of the fund method as a "cross-check" on the reasonableness of the requested fee. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *Fischel v. Equitable Life Assur.*, 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F. 3d at 1050. In securities class actions it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.[8]

---

[8]  *See, e.g., Vizcaino,* 290 F.3d at 1051-52 (approving a fee representing a 3.65 multiple of lodestar, and listing twenty-three shareholder settlements in which the average multiplier was 3.28); *In re Mercury Interactive Corp. Sec. Litig.*, No. 5:05-CV-03395-JF, 2011 WL 826797, at *2 (N.D. Cal. Mar. 3, 2011) (lodestar cross-check multiplier of 3.08 "is within the acceptable range"); *OmniVision*, 559 F. Supp. 2d at 1048 ("[C]ourts have approved multipliers ranging

Here, Class Counsel requests no upward adjustment, and in fact requests a fee award significantly *less* than its lodestar.  The total lodestar for Class Counsel for all work done in this Action through April 5, 2018 is $2,187,704.25.[9] *See* Joint Decl. Exs. 4 & 5.  Thus, Class Counsel's fee request of 25% of the gross settlement fund, or $1,550,000, is approximately 0.71 times the lodestar.  Courts in this Circuit have routinely found negative multipliers to satisfy the lodestar cross-check. *See, e.g., California v. Infineon Techs. AG (In re Dynamic Random Access Memory (DRAM) Antitrust Litig.)*, No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS 190974, at *129-30 (N.D. Cal. Oct. 30, 2013) (negative multiplier "alone is virtually sufficient to satisfy the cross-check requirement"); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, at *42-43 (N.D. Cal. Nov. 26, 2007) (negative multiplier suggests that "the requested percentage based fee is fair and reasonable").  Thus, this factor supports the requested fee.

### G.    The Reaction Of The Class Supports The Requested Award

Over 45,000 copies of the Court-approved Notice were mailed to Class Members.  SCS Decl., ¶ 6.  The Notice was also published on *GlobeNewswire* and *PR Newswire*, and was made available to the public on the Claims Administrator's website. *Id.*, ¶¶ 10-11.  Class Members were informed in the Notice that Class Counsel would apply for attorneys' fees of up to 25% of the Settlement Fund and were advised of their right to object to Class Counsel's fee request.  *Id.* Ex. B.

---

between 1 and 4."); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, at 783 (9th Cir. 2007) (upholding 25% fee award yielding multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed"); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL1309692, at *2-3 (N.D. Cal. Mar. 31, 2014) (finding a 3.5 multiplier reasonable); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (approving attorneys' fees that resulted in lodestar multiplier of 2.83).

[9] The hours and lodestar submitted exclude all time and expense devoted to Class Counsel's motion for fees and expenses, and excludes all hours and expenses previously submitted to the Court in connection with the prior settlement.

14

To date, there has been only one request for exclusion and no objections to the fee request.  *See Id.* ¶¶ 13-14.  Courts have recognized that "[t]he presence or absence of objections from the class is also a factor in determining the proper fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *48-50 (C.D. Cal. June 10, 2005) ("conclud[ing] that the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,] particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice."); *see also In re Wireless Facilities*, 2008 U.S. Dist. LEXIS 128674, at *23 ("The lack of objections from potential claimants favors awarding Lead Counsel the requested amount of attorneys' fees.").

## V.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel's expenses are reasonable, consistent with the out-of-pocket expenses that clients typically pay in complex litigation of this type, and were necessarily incurred to achieve this $6.2 million supplemental recovery for the Class.  Class Counsel has incurred litigation expenses of $795,401.42, for which they have not been reimbursed to date. Joint Decl. ¶ 60.  This figure does not include any expenses submitted to the Court in connection with the first settlement.

The $795,401.42 of expenses requested to be reimbursed are detailed in the Joint Declaration of Class Counsel. *See* Joint Decl. Exs. 4 & 5. The amount requested is substantially less than that identified in the Notice, which apprised the Class Members that Class Counsel would seek expenses in an amount not to exceed $1.1 million.  To date, no Class Member has objected to that request.

These expenses should be reimbursed.  Consistent with other jurisdictions, "courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation." *Destefano v. Zynga, Inc.*, No.

15

1   12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *73 (N.D. Cal. Feb. 11, 2016); *see also*

2   *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award

3   of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying

4   client"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)

5   (same). Class Counsel has pursued this litigation knowing that its outstanding expenses could

6   only be reimbursed (without interest) if the Class won at trial or obtained a settlement. Joint

7   Decl. ¶ 59. Class Counsel has had no incentive to incur and did not incur unnecessary expenses.

8       The expenses for which Class Counsel seek reimbursement were all necessary for the

9   successful prosecution and resolution of the Action on behalf of the Class, and are of the type

10  routinely charged to paying clients.  Therefore, these expenses should be reimbursed out of the

11  common fund.  *Harris*, 24 F.3d at 19; *Immune*, 497 F. Supp. 2d at 1177.  The largest cost—

12  accounting for more than 87% of all litigation expenses—was for experts retained to address

13  significant matters in this litigation.  Zachary Nye of Stanford Consulting Group provided a

14  market efficiency analysis, a damages analysis, a loss causation analysis, and assisted with the

15  plan of allocation, at a cost of $291,618.  Lynn Turner of Hemming Morse and Thomas Ray

16  provided accounting expertise, at a cost of $217,649.50.  William Purcell provided expert

17  analysis in the area of the duties of boards of directors, at a cost of $184,050.  The expenses

18  here are consistent with those reimbursed in other similarly complex securities fraud litigations

19  that have progressed to expert discovery.  *See, e.g., In re Ashanti Goldfields Sec. Litig.*, Civil

20  Action No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *15-16 (E.D.N.Y. Nov. 15,

21  2005) (granting reimbursement of $1,377,825.93 in litigation expenses and noting "the

22  largest expense, totaling over $ 500,000, was for the services of expert witnesses. . . . This is not

23  unusual in securities litigation actions."); *In re Puda Coal Inc. Sec. Litig.*, No. 11-CV-2598,

24  Order dated June 22, 2016 (ECF No. 615) (S.D.N.Y.) (granting reimbursement of

25  $2,089,573.76 in litigation expenses including expert fees); *In re Fannie Mae Sec., Derivative,*

26

27

28

Plaintiffs' Motion For Attorneys' Fees and Expenses 3:14-cv-01160-JST

*& ERISA Litig.*, 4 F. Supp. 3d 94, 113-14 (D.D.C. 2013) (granting reimbursement of $10,027,188.94 in "expert and consultant fees").

Reimbursement is also proper with respect to the other requested expenses. Economy air travel, lodging and costs incidental to travel such as meals, taxis and parking, are routinely reimbursed. *See, e.g., Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983); *Harris*, 24 F.3d at 19; *Immune*, 497 F.Supp. 2d at 1177; *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990). These expenses were necessary and reasonable in amount, particularly considering the depositions of seven witnesses produced in Korea. Similarly, mediation fees, court recorder costs, computerized legal research, photocopying, e-discovery and document retrieval and filing costs should be reimbursed. *See Zynga*, 2016 U.S. Dist. LEXIS 17196, at *73; *Immune*, 497 F. Supp. 2d at 1177; *In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*, 631 F.3d 913, 918-19 (8th Cir. 2011).

## VI.    THE AWARD TO CLASS PLAINTIFFS SHOULD BE APPROVED

Class Plaintiffs Thomas and Smith also request that the Court award them $1,500 each to compensate for the significant additional time each expended in representing the Class in the prosecution of claims against Avenue Capital. The PSLRA provides that courts are empowered to approve such awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. §78u-4(a)(4). Class Plaintiffs each met with counsel to prepare for a deposition and sat for a deposition, produced documents in response to Avenue Capital's discovery requests, communicated with counsel about the Action and helped evaluate settlement proposals. *See* Joint Decl. ¶ 61. Although a small compensatory award of $1,500 was awarded to Thomas in connection with the first settlement, courts routinely award lead plaintiffs more than the total requested here. *See, e.g., In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 for each lead plaintiff); *Buccellato v. AT&T*

*Operations, Inc.*, No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 to lead plaintiff, $5,000 to class representatives); *In re Galena Biopharma, Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 82693, at *42 (D. Or. June 24, 2016) ($5,000 to each lead plaintiff).

In short, an award of $1,500 to each Class Plaintiff is warranted.

## VII.    CONCLUSION

Securities class actions are complex and laden with risk. Many times class counsel, after expending thousands of hours of time and hundreds of thousands of dollars of expenses, receives no compensation whatsoever. Here, there was no guarantee that Class Plaintiffs' claims against Avenue Capital would bear any fruit. This complex litigation has been extremely hard-fought, with Avenue Capital represented by experienced and equally determined defense counsel. Without any assurance of success, Class Plaintiffs and their counsel pursued these additional claims to an exceptional conclusion. This additional Settlement represents an excellent supplemental recovery for behalf of the Class and reflects the skill, dedication, and tenacity of Class Counsel. Class Counsel respectfully request that the Court approve the fee and expense application and enter the Order submitted herewith awarding Class Counsel 25% of the Gross Settlement Fund plus reimbursement of $795,401.42 of expenses, and an award of $1,500 each to Class Plaintiffs Thomas and Smith.

Dated: April 5, 2018                    Respectfully Submitted,

**POMERANTZ  LLP**

/s/ Joshua B. Silverman
Patrick V. Dahlstrom
Joshua B. Silverman
Louis C. Ludwig
10 South LaSalle, Ste. 3505
Chicago, Illinois  60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com
        jbsilverman@pomlaw.com
        lcludwig@pomlaw.com

Marc I. Gross
Jeremy A. Lieberman
Michael J. Wernke
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: migross@pomlaw.com
           jalieberman@pomlaw.com
           mjwernke@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (CSB# 219683)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: lrosen@rosenlegal.com

*Class Counsel*

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (CSB# 134180)
Robert V. Prongay (CSB# 270796)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Liaison Counsel*

19